GRAVES *v.* STATE.

[99 So. 364.   No. 23837.]

(Division B. March 10, 1924.)

1. BIGAMY. *Indictment and information. Essential averments with respect to first and second marriages stated; indictment must sufficiently charge each element of offense to enable accused to prepare defense.*

In, a prosecution for bigamy, the indictment should allege the name of the person with whom the first marriage was contracted, or it should allege the time and place of such marriage with reasonable certainty, and should also allege the second marriage with particularity. The indictment must give the accused such information as to each element of the offense charged as will enable him to prepare his defense.

2. BIGAMY. *State must prove valid marriage contracted before second marriage; common-law marriage relied on must be recognized in state where contracted; defendant's common-law marriage in Louisiana not former marriage constituting basis for bigamy prosecution.*

In a case where a person is being tried for bigamy, the proof must show a valid marriage was contracted before the second marriage; and, where the state relies upon co-habitation and a holding out to the world of a relation of husband and wife at a given place, the law of the place must recognize as valid a marriage contracted in that way. The law of Louisiana does not recognize such marriage as valid, and in a trial for bigamy it is error to instruct the jury that such living together and such holding out to the world constitutes a valid marriage.

APPEAL from circuit court of Perry county.

HON. R. S. HALL, Judge.

Proceedings between Charley Graves and the state. From the judgment rendered, the former appeals. Reversed and remanded.

*Watkins & Young,* for appellant.

No one can tell by reading the indictment, what the defendant would be called on to meet, and he could not know, until the state had rested its case (the court remarked in qualifying the jury, that he was charged with bigamy); it is not charged in the indictment, and if we assume that it was an effort to charge bigamy, we cannot tell with whom the bigamous marriage was contracted, or where or when. The indictment charges affirmatively that the "former marriage of appellant and Rena Hickman or McKenzie, was not contracted within the age of consent (regardless of what he intended to say); and

neither the indictment nor proof attempts to show that either of the parties mentioned in the indictment ever ratified said marriage, or that they, or either of them, are now of lawful age and capable of ratifying said marriage, if any. Neither is it charged that defendant's aforementioned lawful wife, if any he had, was still living, and for some unknown reason one Rena Hickman, or McKenzie, is charged in the indictment with exactly the same thing, though she is not named as defendant in the indictment.''

It appears from the testimony that the state was attempting to establish a common-law marriage of appellant to some person, somewhere, sometime, but did not undertake to show any of the particulars by which a common-law marriage was contracted; which is consummated by mutual agreement and terminated by the same, that is by disagreement and a determination to discontinue said marriage. It cannot be terminated by divorce, which always presupposes a valid marriage. See 19 Cyclopedia of Procedure, 370, par. II, subsec. 2. ''The burden is always on the state to establish actual marriage in prosecutions for bigamy.'' See 8 Encyclopedia of Evidence, 441, Citation No. 2, especially Damons' Case, cited.

The venue of the charge is not proven, 3 S. and M. 553; 13 S. and M. 246; 23 Miss. 509; 51 Miss. 353; 55 Miss. 432; Morris State Cases 245, 455, 574; 58 Miss. 858; 58 So. 1; 72 So. 965, and 647; 54 So. 72.

If the state relied on a common-law marriage, it was incumbent on it to show that both parties intended marriage, not merely unlawful cohabitation, nor adultery, and were capable of making such a contract. 58 So. 444. Also a common-law marriage was never recognized in Louisiana, while it is not shown that a marriage of any kind was ever consummated by appellant in Louisiana, or anywhere else. The state, of course, always assumes the burden of proving that the first marriage was valid. Its validity is the thing that makes the second marriage void and bigamous.

Beginning as far back as the *Gibson case,* 38 Miss. 313, 82 Miss. 555, down to the *Bennett case,* 55 So. 482, it is announced by the supreme court of Mississippi, "That the state proves both marriages," and if it appears that the first marriage was void, the defendant cannot be convicted. There is no attempt to prove a marriage in Louisiana.

*Francis S. Harmon,* Assistant Attorney-General, for the state.

The questions before this court really boil down to three, namely, the sufficiency of the indictment, establishment of the venue in Perry county, and proof of the first marriage. It is to these questions that we turn our attention.

I. Sufficiency of the indictment. The indictment charges that "Charlie Graves, on the 17th day of September, 1923, in Perry county, aforesaid, did unlawfully, knowingly and feloniously marry Rena McKenzie, alias Rena Hickman, a married woman, he being a married man," etc.

Counsel alleges in his brief that the indictment is defective in that it does not allege that the defendant had a living, lawful wife. It is submitted that the indictment is sufficient on this point. It specifically says that the defendant "was a married man" at the time of the so-called second marriage. Now it goes without saying that one cannot be a married man unless one has a legal wife living at the time, and the allegation is therefore sufficient. The specific question was raised and decided in accordance with the contention here made. in *State of Iowa* v. *Hughes,* 58 Iowa, 165, 11 N. W. 706.

Counsel further objects to the indictment because it negatives the exceptions contained in section 1052 of the Code of 1906, section 780 of Hemingway's Code. It is entirely unnecessary in an indictment for bigamy to negative a statutory exception at all, and all this portion of the

indictment was mere surplusage. This question was conclusively settled in the leading case of *Bennett* v. *State,* 100 Miss. 684, (1911).

II. Venue. Counsel vigorously contends that the venue is not adequately laid in Perry county. But from Squire Boone's testimony the beat and the town in which the second ceremony was performed is established, and this town of Richton is stated to be in Perry county, thus sufficiently establishing the venue and conforming to the indictment.

III. Proof of existing, valid marriage. The most important question in the case is whether the defendant was legally married at the time of the second ceremony. Counsel for the appellant seems to labor under the misapprehension that it is necessary to actually introduce the marriage certificate, or to prove by eye witnesses that such a marriage had taken place. Such a restrictive attitude would make it wellnigh impossible to convict of the crime of bigamy, and the wellnigh unanimous current of authority is to the effect that an existing, valid marriage may be established in other ways. 7 C. J. 1175, section 53; *Dumas* v. *State,* 14 Texas Appeals, 464, at 472.

Here we find from the testimony qualified admissions of the defendant that the woman with whom he was living in the Bogalusa logging camp was his wife; unqualified statements by next door neighbors that Graves lived with this woman and their children as husband and wife, and that such was their general reputation in the community. It is submitted, therefore, that the evidence in the case is amply sufficient to satisfy all three tests laid down by Corpus Juris, any one of which is sufficient in some states to prove the fact of marriage.

There is a presumption that a man lives and cohabits with his lawful wife. 7 C. J. 1172; *United States* v. *Smith,* 14 Pac. (Utah) 293. A great number of cases lay down the rule that the first marriage may be established by circumstantial evidence. *Murphy* v. *The State,* 122 Ga. 149; *Apkins* v. *The Commonwealth,* 148 Ky. 662; *Com-*

*monwealth* v. *Hayden,* 163 Mass. 453; *Bryan* v. *The State,* 63 Texas Criminal, 200.

We submit, therefore, that the fact of an existing legal marriage is sufficiently proved in this case. The three constituent elements of the crime being thus adequately proved, the conviction must stand, and the case be affirmed.

ETHRIDGE, J., delivered the opinion of the court.

The appellant, Graves, was indicted for bigamy; the indictment charging that Charley Graves on the 17th day of September, 1923, in Perry county aforesaid, did unlawfully, knowingly, and feloniously marry Rena Mc-Kenzie, alias Rena Hickman, a married woman, he being a married man; the husband of Rena McKenzie, alias Rena Hickman, and the wife of Charley Graves not being absent from them for seven consecutive years without being known to such persons within the time to be living, and not absenting herself from Charley Graves or Rena McKenzie and remaining without the United States continually for seven years, and the former husband of Rena McKenzie and former wife of Charley Graves not having been lawfully divorced, and the said former wife of Charley Graves and former husband of Rena Hickman not having had the former marriage contracts annulled by a court of competent jurisdiction for the nullity of marriage contracts, and said former marriage of Rena Hickman and said former marriage of Charley Graves not being contracted within the age of legal consent and not annulled by a decree of a competent court. This indictment was demurred to and the demurrer overruled.

The state thereupon introduced testimony of several witnesses and proved the following facts: That the appellant appeared before a justice of the peace at Richton, Miss., accompanied by a woman, and had a marriage license issued by the circuit clerk of Perry county for the marriage of appellant and Rena Hickman, and the

justice of the peace performed a marriage ceremony between the man and the woman. He had never seen the woman before nor since, and did not know whether she was the same woman referred to by other witnesses who had formerly lived at Bogalusa, La. The state also produced evidence that said Graves lived with a woman whom he held out as his wife at Bogalusa, La., some months before the trial of the cause. It proved that Graves abandoned the said woman who had then recently given birth to a child, leaving her the day following the birth of such child, and that one Rena Hickman or Rena McKenzie, left Bogalusa at the same time, and the said Rena Hickman also lived while at Bogalusa with a man as a husband, and that she and he held themselves out and were recognized by the community as husband and wife. There was a witness also introduced who visited appellant while he was confined in jail, and he testified that the Hickman woman at the time was in jail as the wife of Graves. This witness also testified that he knew Graves at Bogalusa, and that he had a woman and some children there which he held out as his children and his wife, and that they were regarded by the community as husband and wife. There was no proof of a ceremonial marriage between Graves and the woman with whom he lived at Bogalusa; neither was there any proof of a ceremonial marriage between Rena Hickman and the man with whom she lived and who she claimed was her husband at Bogalusa, La.

The state procured two instructions: First, the court instructed the jury for the state that: "If you believe from the testimony in this case beyond a reasonable doubt that defendant and Rena McKenzie or Rena Hickman, were married in Perry county at a time when defendant had a living, legal wife then you must find him guilty as charged."

Second: "You are further instructed for the state that, if you believe from the evidence in this case beyond a reasonable doubt that defendant lived in Boga-

lusa with a woman, whom he held out to the world as his wife, and that they were considered by the community as husband and wife, and reared a family as husband and wife, then under the law they were husband and wife.''

This instruction is assigned for error. It will be noted from a reading of the indictment above set out that the name of the former wife of Graves, nor the place of marriage is not set forth, but it is alleged in general terms that he married Rena McKenzie, alias Rena Hickman, a married woman, he being a married man. It seems that the indictment was drafted with a view of catching the defendant upon either horn of the indictment. In our opinion the indictment had to set forth something in the nature of an allegation with reference to time, place, and circumstance of the former marriage, or it had to name the person with whom the former marriage is alleged to have been contracted. There had to be an allegation showing that there was a valid marriage. While it is not necessary to set forth the former marriage with all the particularity of description that the second marriage is alleged, still it ought to allege enough to inform the accused of the marriage he is alleged to have contracted and not require him to run the gauntlet of any possible proof of a marriage with any person, anywhere, at any time, in the whole world.

In the second place, we think there was failure in the proof, and it was not sufficient under the Louisiana law to prove merely the living together as husband and wife. As we understand the decisions of that state, it has never recognized the validity of mere marriages by cohabitation and holding out to the world as husband and wife, but requires a ceremonial marriage.

In *Johnson's Heirs' v. Raphael*, 117 La. 967, 42 So. 470, the Louisiana court made the following announcements with reference to marriage in that state:

''Marriages by private agreement, express or implied, have never been recognized by the laws of Louisiana, which, on the contrary, have always required that a con-

tract of marriage shall be celebrated by a priest, minister, or some . . . public officer, in the presence of three witnesses.''

Second. ''While the Civil Code of 1825 inferentially permitted the marriage of slaves, with the consent of their masters, it did not dispense with the celebration of nuptials in such cases.''

Third. ''Act 1868, No. 210, p. 278, recognized the nullity of marriages by private agreement, whether express or implied, from cohabitation as man and wife, by providing for their validation, conditioned on the authentic acknowledgment of the marriage relation by' the parties in interest.''

Fourth. ''Slave marriages, while binding in morals, produced no civil effects until ratified by continued cohabitation after emancipation or by acknowledgment as required by the act of 1868.''

Fifth. ''Where a negro man and woman 'took up with each other' during the time of slavery, without any celebration whatever of their union, the consent of their master to the continuance of their irregular relations did not have the effect of creating a marriage.''

In *Henderson v. Cargill,* 31 Miss. 367, this court held that—''In all cases except in actions for criminal conversation, and in prosecutions for bigamy, the fact of marriage may be established by evidence of the acts and declarations of the parties, by proof of the general repute in the family; and by proof of the declarations of deceased persons, who were related to them by blood or marriage, made *ante litem motam.''*

In cases of bigamy each marriage should be proven beyond reasonable doubt, and it requires a higher degree of proof in prosecution of this kind than it does in ordinary actions involving property rights or civil *status.* The state should prove a valid marriage. It may be that proof of a ceremonial marriage would be ample; but in the present case, if there was a marriage between appellant and the woman in Bogalusa, it must have been

considered a marriage under the laws of that state, because there is no proof of a marriage anywhere, and the only place where there is any proof of the acknowledgment of such relation and of the holding out of themselves as married to the world was in the state of Louisiana, and we have seen that by the laws of that state such facts did not create a valid marriage. It appears that the woman and children with whom the appellant lived in Bogalusa had moved from that place. It does not appear clearly how long a time had elapsed between the time the appellant left Bogalusa and the time he contracted a ceremonial marriage in Richton. Neither does it appear beyond reasonable doubt that the woman with whom the marriage was contracted in Richton was the same woman as Rena Hickman.

We think the state failed to prove its case, and the judgment will be reversed, the demurrer to the indictment sustained, and the appellant held to await the action of the grand jury on the proper indictment.

*Reversed and remanded.*